Nathan R. Ring
Nevada State Bar No. 12078
STRANCH, JENNINGS & GARVEY, PLLC
3100 W. Charleston Boulevard, Suite 208
Las Vegas, NV 89102
Telephone: (725) 235-9750
lasvegas@stranchlaw.com

A. Brooke Murphy, *pro hac vice*
MURPHY LAW FIRM
4116 Will Rogers Pkwy, Suite 700
Oklahoma City, OK 73108
T: (405) 389-4989
E: abm@murphylegalfirm.com

*Attorneys for Plaintiff Jeremiah Archambault
and the Class*

*[Additional Counsel Listed in Signature]*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| JEREMIAH ARCHAMBAULT, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>V.<br><br>RIVERSIDE RESORT & CASINO INC. AND RIVERSIDE RESORT & CASINO, LLC,<br><br>DEFENDANTS. | Case No.: 2:24-cv-01691-GMN-DJA |
| MICHAEL J. MONTOYA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>PLAINTIFF,<br><br>V.<br><br>RIVERSIDE RESORT & CASINO LLC, | Case No.: 2:24-cv-01692 |

DEFENDANT.

FLOYD M. PATTEN, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

          PLAINTIFF,

V.

RIVERSIDE RESORT & CASINO INC.,

          DEFENDANT.

Case No.: 2:24-cv-01695

ROBERT DAPELLO AND JONATHAN
FARNAM, INDIVIDUALLY AND ON BEHALF
OF ALL OTHERS SIMILARLY SITUATED,

PLAINTIFFS,

V.

RIVERSIDE RESORT & CASINO INC. AND
RIVERSIDE RESORT & CASINO, LLC,

DEFENDANTS.

Case No.: 2:24-cv-01732

GARY LESTER, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

PLAINTIFFS,

V.

DON LAUGHLIN'S RIVERSIDE RESORT
HOTEL & CASINO D/B/A RIVERSIDE
RESORT & CASINO,

DEFENDANTS.

Case No.: 2:24-cv-01760

| | |
|---|---|
| DARLENE MARTIN AND DAVID WILLEY, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> PLAINTIFFS, <br><br> V. <br><br> RIVERSIDE RESORT & CASINO INC. AND RIVERSIDE RESORT & CASINO, LLC, <br><br> DEFENDANTS. | Case No.: 2:24-cv-01767 |

## **PLAINTIFFS' MOTION TO CONSOLIDATE AND APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT**

Pursuant to Federal Rule of Civil Procedure 42(a)(2), Jeremiah Archambault, Michael J. Montoya, Floyd M. Patten, Robert Dapello, and Jonathan Farnam ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move for an order consolidating the above captioned matters *Archambault v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC*, Case No. 2:24-cv-1691 (D. Nev.) (hereafter the "*Archambault* Action"), *Montoya v. Riverside Resort & Casino, LLC*, Case No. 2:24-cv-1692 (hereafter the "*Montoya* Action"), *Patten v. Riverside Resort & Casino, Inc.*, Case No. 2:24-cv-1695 (D. Nev.) (hereafter the "*Patten* Action"), *Dapello v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC*, Case No. 2:24-cv-01732 (D. Nev.) (hereafter the "*Dapello* Action"), *Lester v. Don Laughlin's Riverside Resort & Casino*, Case No. 2:24-cv-01760 (D. Nev.) (hereafter the "*Lester* Action"), and *Martin v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC*, Case No. 2:24-cv-01767 (D. Nev.) (hereafter the "*Martin* Action") (together the "Related Actions"). Plaintiffs further respectfully move, pursuant to Federal Rule of Civil Procedure 23(g), for the Court to enter an order appointing A. Brooke Murphy of Murphy Law Firm and Raina C. Borrelli of Strauss Borrelli PLLC as Interim Co-Lead Class Counsel (collectively, "Proposed Interim Class Counsel") and to appoint Nathan R. Ring of Stranch, Jennings & Garvey, PLLC as Liaison Counsel.

All six actions arise out of the same operative facts— a recent, targeted cyber-attack that allowed a third party to gain unauthorized access to the computer systems housing sensitive consumer data maintained by Riverside Resort & Casino, Inc. ("Defendant" or "Riverside") that reportedly exposed confidential and sensitive personally identifying information ("PII") of thousands of individuals discovered by Defendant in July 2024 (the "Data Breach"). The Related Actions assert virtually identical causes of action, define overlapping classes, and seek similar remedies as against a common defendant. To maximize efficiency and judicial economy, the Court should grant Plaintiffs' motion by consolidating the Related Actions and establishing a leadership structure.

## I.     **BACKGROUND**

Defendant Riverside is a Nevada-based casino resort. The Related Actions each arise out of a recent, targeted cyber-attack that allowed a third party to gain unauthorized access to the computer systems housing sensitive consumer data maintained by Riverside. In the course of its business, Riverside takes custody of its customers' sensitive and private information including their names and Social Security numbers ("Personally Identifiable Information" or "PII"). The Related Actions each allege that as a result of Defendant's failure to adhere to adequate data security practices the PII of Plaintiffs and approximately 55,155 other consumers across the country were accessed by a malicious actor (the "Data Breach").

Plaintiffs learned they were victims of the Data Breach, and each decided to file their respective class actions following their receipt of notice letters from Defendant in September 2024. Plaintiff Archambault and Plaintiff Montoya filed their respective actions in this District on September 11, 2024. Plaintiff Patten filed his complaint on September 12, 2024, in this District. And Plaintiffs Dapello and Farnam filed their complaint on September 16, 2024. Plaintiffs allege the following causes of action against Defendant: Negligence; Breach of Implied Contract; Unjust Enrichment; and violations of the Nevada Consumer Fraud Act.

The Related Actions are putative class actions filed on behalf of classes of individuals whose PII was compromised by the Data Breach. Based on the same common facts, the Related Actions allege that Riverside's failures to ensure the adequacy of its IT networks and systems, and

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

that class members' PII was secured and protected, fell far short of its obligations to those individuals and their reasonable expectations for data privacy; jeopardized the security of their PII; and put them at serious risk of fraud and identity theft. The Related Actions allege that Riverside's inadequate measures to ensure data privacy and data security resulted in the Data Breach. The Related Actions allege the same common course of misconduct relating to a single event (*i.e.,* the Data Breach), seek the same damages and relief, and assert largely similar counts on behalf of overlapping nationwide classes.

After a period of meeting and conferring, Plaintiffs' counsel agreed to coordinate their litigation efforts for the benefit of the Class.

## II.   <u>THE RELATED ACTIONS SHOULD BE CONSOLIDATED</u>

### A.  <u>Legal Standard</u>

Rule 42(a) of the Federal Rules of Civil Procedure provides:

> If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. P. 42(a).

As the rule states, a motion to consolidate must meet the threshold requirement of involving "a common question of law or fact." If that threshold requirement is met, then whether to grant the motion becomes an issue of judicial discretion. *Arnold v. Eastern Air Lines*, 681 F.2d 186, 193 (4th Cir.1982). This Court has specifically addressed what factors should be considered in determining whether a motion to consolidate should be granted:

> "The court should weigh the risk of prejudice and possible confusion versus the possibility of inconsistent adjudication of common factual and legal issues, the burden on the parties, witnesses, and judicial resources by multiple lawsuits, the length of time required to try multiple suits versus a single suit, and the relative expense required for multiple suits versus a single suit."

*In re Cree, Inc., Securities Litigation*, 219 F.R.D. 369 (M.D.N.C. 2003) (*citing Arnold v. Eastern Air Lines*, 681 F.2d at 193). "Although a court must consider all of these factors, 'judicial economy generally favors consolidation.' *U.S. ex rel. Sprinkle Masonry, Inc. v. THR Enterprises,*

*Inc.*, Case Nos. 2:14-cv-251, 2:14-cv-252, 2014 WL 4748527 (citing *Switzenbaum v. Orbital Science Corp.*, 187 F.R.D. 246, 248 (E.D. Va. 1999)).

### B. <u>Consolidation is Appropriate</u>

The complaints in the Related Actions relate to the same, common factual allegations and legal theories. The Related Actions assert virtually identical causes of action against the common Defendant relating to the same facts and seek the same relief in response to the same event–the Data Breach. The Actions seek certification of an overlapping nationwide class and allege that class members suffered harm as a result of the Data Breach because their PII (including their Social Security numbers) was exposed to third parties without their authorization. The actions present the quintessential consolidation scenario, and the Court should consolidate the Related Actions to ensure judicial economy and preserve party resources.

Consolidation of the Related Actions (and any future similar actions alleging claims relating to the Data Breach) is warranted because it will simplify discovery, pretrial motions, class certification issues, and other case management issues, especially given that the cases are at their procedural inception. Consolidating the Related Actions will also reduce the confusion and delay that may result from prosecuting related putative class actions separately, including eliminating duplicative discovery and the possibility of inconsistent rulings on class certification, evidentiary motions, and other pretrial matters. Consolidating the cases will also decrease the amount of time that would have been otherwise required for six separate cases, as many witnesses would have necessarily been called in all six cases. Furthermore, consolidation of the cases and appointment of qualified Interim Co-Lead Counsel will foster judicial economy and will not prejudice any party.

Courts consistently find that data breach class actions are particularly appropriate for consolidation. *See, e.g.*, *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-3424-K, (N.D.Tex. 2021), Dkt. 36 (ordering consolidation of three cases stemming from the same data breach); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1102-WJM-

STV, 2017 U.S. Dist. LEXIS 142626, at *3 (D. Colo. Sep. 1, 2017) ("[B]oth actions are substantively identical and are in the same stage of litigation . . . arise out of the same occurrence: a data breach . . . ."); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 745 (W.D.N.Y. 2017) (noting court had previously "issued an order consolidating . . . pursuant to Federal Rule of Civil Procedure 42(a)(2), and transferred the case" to one judge in large data breach litigation).

Accordingly, Plaintiffs request that the Court consolidate the Related Actions, and any subsequently filed or transferred actions relating to the Data Breach, under the docket number of the first filed case, *Archambault v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC,* Case No. 2:24-cv-01691-GMN-DJA.

### III.   THE APPOINTMENT OF INTERIM CLASS COUNSEL IS WARRANTED

#### A.   Legal Standards

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); (*cited in Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK), 2014 WL 835174, at *2 (D. Minn. Mar. 4, 2014)); *see also Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020). Designating lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Roe v. Arch Coal, Inc.*, No. 4:15-cv-910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig.* § 21.11 (4th ed. 2004)).

Determining the appointment of lead class counsel requires the court to consider counsel's: "(1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources." *Adedipe*, 2020 WL 835174, at *2 (citing Fed. R. Civ.

P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig.* § 10.22. The goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)-(B); 7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005).

## B.  The Appointment of Proposed Interim Class Counsel Satisfies Relevant Factors

Proposed Interim Co-Lead Counsel both satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys have successfully litigated numerous class actions involving data breaches and privacy claims on behalf of millions of consumers. Proposed Interim Co-Lead Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from both cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Co-Lead Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, and extensive resources needed to efficiently prosecute this action, the Court should grant Plaintiffs' motion.

### 1.  Proposed Interim Co-Lead Counsel Have Performed Substantial Work to Date

While no one factor under Federal Rule of Civil Procedure 23(g)(1) "should necessarily be determinative," Advisory Committee Notes (2003), the investigative and analytical efforts of counsel can be a deciding factor:

> In a case with a plaintiff class, the process of drafting the complaint requires some investigatory and analytical effort, tasks that strangers to the action most likely will not have undertaken. All other things being equal, when an attorney has performed these or other investigative and analytical tasks before making

the application for appointment, he or she is in a better position to represent the class fairly and adequately than attorneys who did not undertake those tasks.

MOORE'S FED. PRAC. § 23.120(3)(a) (3d. Ed. 2007).

Here, Proposed Interim Co-Lead Counsel have performed at least the following work thus far in connection with the consolidated actions:

a)   Researched and investigated potential legal claims arising from Defendant's alleged failure to properly secure and safeguard PII, comply with industry standards to protect information systems that contain PII, and provide adequate notice when PII was allegedly unlawfully disclosed and compromised on behalf of each respective Plaintiff and the proposed class;

b)   Reviewed and analyzed numerous news articles describing Defendant's challenged conduct and how the Data Breach occurred;

c)   Reviewed and analyzed articles on the value of PII and the effects of its unauthorized disclosure;

d)   Reviewed and analyzed Federal Trade Commission's guidelines relating to the implementation of reasonable data security practices;

e)   Investigated the nature of the challenged conduct at issue by interviewing numerous individuals affected by the Data Breach;

f)   Reviewed and analyzed comments and statements by Defendant related to the challenged conduct at issue;

g)   Investigated the adequacy of the named Plaintiffs to represent the putative class;

h)   Drafted and filed the complaints in the consolidated actions;

i)   Drafted Plaintiffs' Motion for Consolidation; and

j)   Drafted Plaintiffs' Motion for Appointment of Interim Class Counsel.

These investigative efforts represent a high standard of professionalism, dedication, and thoroughness, which have been marshaled to identify, develop, and demonstrate the claims alleged in the operative complaints. These measures are precisely the type of work that the Advisory Committee Notes to Rule 23 state that the Court should consider in appointing interim class

counsel. *See Rubenstein v. Scripps Health*, No. 21CV1135-GPC(MSB), 2021 WL 4554569, at *3 (S.D. Cal. Oct. 5, 2021).

>    **2.   Proposed Interim Co-Lead Counsel Are Highly Experienced in Leading and Successfully Resolving Complex Consumer Class Actions Involving Claims Similar to Those at Issue in This Litigation**

The second factor the Court must consider is "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action." Fed. R. Civ. P. 23(g)(1)(A)(ii). Here, Proposed Interim Co-Lead Counsel have substantial experience handling class actions and other complex litigation, including successful experience litigating and settling cases on behalf of individuals in the same demographic. Collectively, as well as singularly, Proposed Interim Co-Lead Counsel and their firms have deep class action experience, have been certified as class counsel by many federal courts, and possess the skills to represent the proposed class.

Additionally, Proposed Interim Class Counsel and proposed Liaison Counsel are at the forefront, individually and in combination, of consumer privacy class actions, and specifically, ones involving data breaches. Because the claims in these actions focus on the protection of PII, the great risk of potential harm flowing from the theft of such information, and the necessary mitigation efforts needed to remediate the effects of this data breach, appointment of capable and experienced class counsel from the outset is more important here than in some other more traditional consolidation motions that the Court regularly entertains.

>    **A. Brooke Murphy of Murphy Law Firm**

For more than a decade, Ms. Murphy has specialized in representing plaintiffs in class actions and other complex litigation.  Ms. Murphy has litigated numerous data breach class actions across the country where she has obtained several successful rulings on issues of standing, pleading, and class certification. Ms. Murphy has similarly overcome common challenges by defendants in data breach class actions, including on matters involving the applicability of

arbitration clauses, assertions of privilege or work-product protections, and attempts to exclude expert testimony.

Through her involvement in data breach class actions, Ms. Murphy has worked closely with consulting and testifying experts to assist in the preparation of data security and damages reports. Ms. Murphy has conducted technical depositions of data security personnel, forensic investigators, and information security consultants. Ms. Murphy is also well-skilled in managing and navigating large document productions and has overseen the search and review of productions involving millions of pages of documents.

Based on her years of extensive experience, Ms. Murphy has been court-appointed as class counsel or co-lead counsel in several data breach class actions. *See, e.g., Saker v. Cherry Street Services, Inc.,* Case No. 24-04205-NZ (Mich., Kent Cty.); *In re Bridgeway Center Data Breach Litigation*, Case No. 2024-CA-1395 (Okaloosa County, Fla.); *Lockridge v. Quality Temporary Services, Inc.,* Case No. 4:22-cv-12086 (S.D. Mich.); *Rose v. BHI Energy Services, LLC, et al.*, Case No. 1:23-cv-12513 (D. Mass.); *In re Precision Imaging Centers Data Breach Litigation.*, Case No. 2023-CA-009321 (Duval County, Fla.); *In re: Mondelez Data Breach Litig.*, Case No. 1:23-cv-0399 (N.D. Ill.); *Perez v. Carvin Wilson Software, LLC,* Case No. CV-23-00792-PHX-SMM (D. Ariz.); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, Case No. 1:22-cv-00591-TNM (D.C.C.); *In re: Solara Medical Supplies Data Breach Litig.,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.); *McFarlane v. Altice USA, Inc.,* Case No. 20-CV-1297-JMF (S.D.N.Y.). Ms. Murphy's biography and resume is attached hereto as Exhibit 1.

### **Raina Borrelli of Strauss Borrelli PLLC.**

Raina Borrelli is a partner at Strauss Borrelli PLLC ("Strauss Borrelli") where she leads the firm's class action practice group. Ms. Borrelli received her J.D. *magna cum laude* from the University of Minnesota Law School in 2011. Prior to joining Strauss Borrelli, Ms. Borrelli was a partner at Gustafson Gluek PLLC, a boutique class action firm in Minneapolis, Minnesota, where she successfully prosecuted complex class actions in federal and state courts, including *Hudock v. LG Electronics USA, Inc.*, 16-cv-1220 (JRT/KMM) (D. Minn.); *Baldwin v. Miracle-Ear, Inc.*, 20-

cv-01502 (JRT/HB) (D. Minn.); *In re FCA Monostable Gearshifts Litig.*, 16-md-02744 (E.D. Mich.); *Zeiger v. WellPet LLC*, 17-cv-04056 (N.D. Cal.); *Wyoming v. Procter & Gamble*, 15-cv-2101 (D. Minn.); *In re Big Heart Pet Brands Litig.*, 18-cv-00861 (N.D. Cal.); *Sullivan v. Fluidmaster*, 14-cv-05696 (N.D. Ill.); *Rice v. Electrolux Home Prod., Inc.*, 15-cv-00371 (M.D. Pa.); *Gorczynski v. Electrolux Home Products, Inc.*, 18-cv-10661 (D.N.J.); *Reitman v. Champion Petfoods*, 18-cv-1736 (C.D. Cal.); *Reynolds, et al., v. FCA US, LLC*, 19-cv-11745 (E.D. Mich.). Ms. Borrelli has repeatedly been named to the annual Minnesota "Rising Star" Super Lawyers list (2014-2021) by SuperLawyers Magazine. She has also been repeatedly certified as a North Star Lawyer by the Minnesota State Bar Association (2012-2015; 2018-2020) for providing a minimum of 50 hours of pro bono legal services.

Ms. Borrelli has significant experience in data privacy litigation and is currently litigating more than fifty data breach cases in courts around the country as lead counsel or co-counsel on behalf of millions of data breach victims, including *In re Netgain Tech. Consumer Data Breach Litig.*, 21-cv-1210 (D. Minn.) (appointed by the court to the Plaintiffs' Interim Executive Committee); *In re C.R. England, Inc. Data Breach Litig.*, 2:22-cv-374-DAK-JCB (appointed by the court has Interim Co-Lead Counsel); *Medina et al. v. PracticeMax Inc.*, 22-cv-01261-DLR (D. Ariz.) (appointed to Executive Leadership Committee); *Forslund et al. v. R.R. Donnelley & Sons Co.*, 1:22-cv-04260 (N.D. Ill.) (appointed as interim co-lead class counsel); *In re Lincare Holdings, Inc. Data Breach Litig.*, 8:22-cv-01472 (M.D. Fla.) (appointed to Interim Executive Leadership Committee); *Corra et al. v. Acts Retirement Services, Inc.*, 2:22-cv-02917 (E.D. Pa.); *Grogan v. McGrath RentCorp., Inc.*, 22-cv-490 (N.D. Cal.); *Baldwin v. Nat'l Western Life Ins. Co.*, 21-cv-04066-WJE (W.D. Mo.) (settlement on behalf of 800,000 data breach victims); *Hulewat et al. v. Medical Management Resource Group, LLC*, 2:24-cv-00377 (D. Ariz.) (appointed Interim Co-Lead Class Counsel).

In addition to her robust data breach practice, Ms. Borrelli is also currently litigating a variety of consumer protection cases, including under the TCPA and various state right of publicity laws, including: *Murray, et al. v. Grocery Delivery E-Services USA Inc. d/b/a Hello Fresh*, 19-cv-

12608 (D. Mass.) ($14 million TCPA class settlement); *Baldwin, et al. v. Miracle-Ear, Inc., et al.*, 20-cv-1502 (D. Minn.) ($8 million TCPA class settlement); *Callahan v. PeopleConnect, Inc.*, 20-cv-9203 (N.D. Cal.); *Kellman et al. v. Spokeo*, 21-cv-08976 (N.D. Cal.).

Additionally, Ms. Borrelli has substantial experience leading discovery teams in complex class action matters and working with class damages experts and class damages models in consumer protection cases.

Ms. Borrelli is qualified to serve as Interim Co-Lead Counsel in this matter. Further information regarding Ms. Borrelli and her firm is set forth in the Strauss Borrelli firm resume, attached as Exhibit 2.

### Nathan R. Ring of Stranch, Jennings & Garvey, PLLC

Mr. Ring is of counsel with Stranch, Jennings & Garvey, PLLC and is based in Las Vegas, Nevada. He has been a member of the Nevada Bar since 2010 and licensed to practice before this Court since 2011. He is also licensed to practice law in the states of Oregon and Washington and before all federal courts within those states. He has significant experience litigating before this District Court in complex ERISA and labor law matters. He also has experience in complex class action matters.

He has been appointed as local liaison in the 2023 MGM Data Breach case, which is pending in this Court as Case No. 2:23-cv- 01480-RFB-MDC. He was also the lead local counsel in the data breach matter styled as *Coon v. JS Autoworld*, in the Eighth Judicial District Court, docketed in that Court as Case No. A-23-869272-C. This matter ended in a favorable settlement for the Plaintiff class and final approval of that settlement by the Court. In addition to serving as lead counsel or local liaison in those cases, he has also served as lead defense counsel in complex ERISA and health fund class action litigation matters. He is currently lead defense counsel in the case styled as *Goodsell v. Teachers Health Trust, et al.*, which is pending in this Court as Case No. 2:23-CV-01510-APG-DJA. He was lead defense counsel in a complex ERISA pension class action, *Lehman v. Nelson*, which originated as Case No. 2:13-cv-01835-RSM in the Western District of Washington and was litigated for several years and through two Ninth Circuit appeals.

Mr. Ring has the requisite knowledge and understanding of the local rules of practice to serve as local liaison here. He also has the necessary experience in representation in class action litigation and data breach matters to serve as local liaison to co-lead counsel here.

### 3. Proposed Interim Co-Lead Counsel Are Familiar with the Applicable Law

The third factor to consider is "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(iii). Proposed Interim Co-Lead Counsel are knowledgeable about the law applicable to the instant claims, as demonstrated by their experience litigating other class actions and other actions. As set forth above, collectively Proposed Interim Co-Lead Counsel has a track record of successfully litigating and resolving large-scale complex actions, including data breach litigation. Proposed Interim Co-Lead Counsel will ensure their familiarity with the applicable laws and practices of this jurisdiction, as well as this Court's rules and procedures which will serve to minimize inefficiency in attorney time and litigation costs.

### 4. Proposed Interim Co-Lead Counsel Will Commit All Necessary Recourses to Representing the Class

The final Fed. R. Civ. P. 23(g)(1)(A)(iv) factor, which concerns the resources counsel will commit to the case, also strongly supports the appointment of Proposed Interim Co-Lead Counsel. Their firms are well-established, successful law firms that have the resources and personnel necessary to pursue a case of this magnitude, as they have demonstrated in numerous similar class actions. As a result, the firms can fully utilize their resources and knowledge of class action practice to the direct benefit of Plaintiffs and the class members. Proposed Interim Co-Lead Counsel have already demonstrated the will and ability to commit the necessary resources to assure a strong and well-supported case on behalf of members of the proposed class. The firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases which will benefit Plaintiffs and the putative class. Proposed Interim Co-Lead Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

### 5.   Other Factors Support Appointing Proposed Interim Co-Lead Counsel

Notably, proposed Interim Counsel were the first firms to file petitions against Defendant. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints); *Steele v. United States*, Case No. 14-1523, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc.*, Case No. 12cv1063, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, Case No. 12-cv-1831, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action.").

Moreover, the proposed leadership structure has the support of all six Related Actions. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel." "Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel."); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach).

Indeed, after their cases were filed, Proposed Interim Co-Lead Counsel worked promptly to coordinate the proposed leadership structure to avoid any delay due to the egregious nature of Defendant's alleged unlawful conduct and likelihood of imminent further harms to Plaintiffs and the class members. Proposed Interim Co-Lead Counsel seek this leadership structure to best serve the interests of the classes in the most efficient manner possible. All counsel for Plaintiffs supports the proposed leadership structure.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to successful management of the litigation. *See Manual for Complex Litigation* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.*

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware the Court's expectation that they prosecute the case efficiently and without duplication.

Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing. As mentioned above, if appointed, Proposed Interim Class Counsel will establish a protocol for regular time and expense reporting to monitor and manage the efficient prosecution of this action.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to enter an Order: (i) consolidating the Related Actions against Riverside, pursuant to Rule 42, and (ii) appointing A. Brooke Murphy of Murphy Law Firm and Raina C. Borrelli of Strauss Borrelli PLLC as Interim Co-Lead Class Counsel and further appointing Nathan R. Ring as Liaison Counsel.

Dated: September 20, 2024                      Respectfully submitted,


                                              */s/ Nathan R. Ring*
                                              Nathan R. Ring
                                              Nevada State Bar No. 12078
                                              **STRANCH, JENNINGS & GARVEY, PLLC**
                                              3100 W. Charleston Boulevard, Suite 208
                                              Las Vegas, NV 89102
                                              Telephone: (725) 235-9750
                                              lasvegas@stranchlaw.com

                                              A. Brooke Murphy, *pro hac vice*
                                              MURPHY LAW FIRM
                                              4116 Will Rogers Pkwy, Suite 700
                                              Oklahoma City, OK 73108
                                              T: (405) 389-4989
                                              E: abm@murphylegalfirm.com

                                              *Attorneys for Plaintiff Archambault*

                                              Miles N. Clark, Esq.
                                              Nevada Bar No. 13848
                                              LAW OFFICES OF MILES N. CLARK, LLC
                                              5510 S. Fort Apache Rd, Suite 30
                                              Las Vegas, Nv 89148
                                              Phone: (702) 856-7430

Fax: (702) 552-2370
Email: miles@milesclarklaw.com

Samuel J. Strauss, *pro hac vice*
Raina C. Borrelli, *pro hac vice*
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

*Attorneys for Plaintiff Montoya*

David Hilton Wise, Esq.
Nevada Bar No. 11014
**WISE LAW FIRM, PLC**
421 Court Street
Reno, Nevada 89501
(775) 329-1766
(703) 934-6377
Email: dwise@wiselaw.pro

Bryan L. Bleichner (CAL BAR # 220340)
Philip J. Krzeski (OH BAR # 0095713),
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Email: *bbleichner@chesnutcambronne.com*
Email: *pkrzeski@chestnutcambronne.com*

*Attorneys for Plaintiff Patten*

Alex J. De Castroverde
Nevada Bar No. 6950
Ryan Samano
Nevada Bar No. 15995
DE CASTROVERDE LAW GROUP
1149 S. Maryland Pkwy
Las Vegas, NV 89104
Phone: (702) 222-9999
Fax: (702) 383-8741
Ryan@dlgteam.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Leigh S. Montgomery
(pro hac vice forthcoming)
Texas Bar No. 24052214
EKSM, LLP
1105 Milford Street
Houston, Texas 77006
Phone: (888) 350-3931
Fax: (888) 276-3455
lmontgomery@eksm.com

*Attorneys for Plaintiffs Dapello and Farnam*

David Hilton Wise, Esq. Nevada Bar No. 11014
**WISE LAW FIRM, PLC**
421 Court Street
Reno, Nevada 89501
Tel:    (775) 329-1766
Fax:   (775) 329-2432
Email: dwise@wiselaw.pro

M. Anderson Berry (*pro hac vice forthcoming*)
Gregory Haroutunian (*pro hac vice forthcoming*)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916) 777-7777
Facsimile: (916) 924-1829 aberry@justice4you.com
gharoutunian@justice4you.com

*Attorneys for Plaintiff Lester*

Nathan R. Ring
Nevada State Bar No. 12078
**STRANCH, JENNINGS & GARVEY, PLLC**
3100 W. Charleston Boulevard, Suite 208
Las Vegas, NV 89102
Telephone: (725) 235-9750
lasvegas@stranchlaw.com

Tyler J. Bean
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: tbean@sirillp.com

*Attorneys for Plaintiffs Martin and Willey*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of September, 2024, a true and correct copy of **PLAINTIFFS' MOTION TO CONSOLIDATE AND APPOINT INTERIM COUNSEL AND MEMORANDUM IN SUPPORT** was served via the United States District Court CM/ECF system on all counsel of record who have enrolled in this ECF system.

*/s/ Nathan R. Ring*
Nathan R. Ring